IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

SKIN CONSULTANTS, LLC, and                                              PLAINTIFFS
J&K MANAGEMENT, LLC

V.                                              CIVIL ACTION NO. 4:17-CV-166-SA-RP

TEXTRON AVIATION, INC., TEXTRON, INC.,
TEXTRON AVIATION RHODE ISLAND, INC., and
WILLIAMS INTERNATIONAL CORPORATION                                      DEFENDANTS

MEMORANDUM OPINION

Plaintiffs Skin Consultants, LLC, and J&K Management, LLC originally filed this case in the Circuit Court of Washington County, Mississippi. Defendants, Textron Aviation, Inc., Textron, Inc., and Textron Aviation Rhode Island, Inc. removed the case to this Court premising federal jurisdiction on the basis of diversity of citizenship. *See* Notice of Removal [1]. Defendant Williams International Corporation joined in the removal. *See* Joinder [4].

Now before the Court are two separate Motions to Dismiss, or in the alternative, to Compel Arbitration [6, 13] brought by Williams, and the Textron Defendants respectively. In their Motions the Defendants request that the Court dismiss the Plaintiffs' Complaint [2], arguing that the Court does not have personal jurisdiction over them. In the alternative, the Defendants request that the Court stay this case and compel the Parties to arbitrate their claims. These issues are fully briefed and ripe for review.

*Factual and Procedural Background*

Skin Consultants owns a Cessna Model 525 airplane based at the Mid-Delta Regional Airport in Washington County, Mississippi. J&K Management is the lessee and management company for the airplane. On December 11, 2014 the Plaintiffs entered into a contract with

Williams for airplane maintenance on the Cessna. Around the same time, the Plaintiffs entered into a second service contract with Textron for airplane parts.

In early August of 2017 the Plaintiffs' pilot noticed that the Cessna's right engine was consuming more oil than usual. The Pilot contacted Textron to inquire about the oil consumption and repair options. Textron instructed the Pilot to bring the Cessna to their service center in Wichita Kansas, which he did. According to the Plaintiff, Textron and Williams performed repairs and installed new parts on the Cessna and released the aircraft back to the Plaintiffs. While flying back to Mississippi the Pilot noticed some smoke and an unusual odor in the cockpit but was able to complete the return trip without incident and parked the plane in its hangar.

The next morning the Pilot noticed oil leakage from the right engine and contacted the Defendants to report his finding. The Defendants sent a repair team to the airport in Washington County. According to the Plaintiffs, the repair team discovered that a seal was installed backwards during the recent repairs in Kansas. The backwards seal caused additional problems and the entire engine was removed from the plane, shipped to the Defendants' repair center in Michigan for further repairs, and after several weeks, returned and reinstalled. The Cessna was then returned to regular service.

The Plaintiffs, both Mississippi citizens, filed this case in the Circuit Court of Washington County, Mississippi alleging various causes of action against the Defendants including negligent repairs, gross negligence, failure to properly train and supervise employees, and violations of the implied warranty of merchantability. The Defendants, both citizens of states other than Mississippi, removed the case to this court premising jurisdiction on diversity of citizenship. The Defendants now seek dismissal of all of the Plaintiffs' claims arguing that this Court does not have personal jurisdiction over them. In the alternative, the Defendants request that the Court compel

the Parties to arbitrate their disputes. The Court will take up the jurisdictional issue first, and then proceed to the arbitration issue if necessary.

*Personal Jurisdiction*

When determining whether a defendant is subject to personal jurisdiction, the Court must accept as true the uncontroverted factual allegations in the plaintiff's complaint, a *prima facie* showing is all that is required. *Companion Prop. & Cas. Ins. Co. v. Palermo*, 723 F.3d 557, 559 (5th Cir. 2013) (citing *Luv N' Care, Ltd. v. Insta–Mix, Inc.,* 438 F.3d 465, 469 (5th Cir. 2006). In diversity cases, the exercise of personal jurisdiction over a non-resident defendant must comport with both the long-arm statute of the state in which the district court is located, and federal constitutional due process requirements. *Companion*, 723 F.3d at 559 (citing *Paz v. Brush Engineered Materials, Inc.*, 445 F.3d 809, 812 (5th Cir. 2006).

Mississippi's long-arm statute provides that the courts shall have jurisdiction over a nonresident who: (1) "make[s] a contract with a resident of this state to be performed in whole or in part by any party in this state," (2) "commit[s] a tort in whole or in part in this state against a resident or nonresident", or (3) "do[es] any business or perform[s] any character of work or service in this state." MISS. CODE ANN. § 13-3-57.

"Personal jurisdiction comports with due process when first, the defendant has the requisite minimum contacts with the forum state and second, requiring the defendant to submit to jurisdiction in the forum state would not infringe on 'traditional notions of fair play and substantial justice.'" *Companion*, 723 F.3d at 559 (citing *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 105, 107 S. Ct. 1026, 94 L. Ed. 2d 92 (1987); *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945)). "A non-resident defendant establishes such minimum contacts by purposefully availing himself of the benefits of the forum state, so that he 'should

3

reasonably anticipate being haled into court' there." *Companion*, 723 F.3d at 559 (citing *Rudzewicz*, 471 U.S. at 475, 105 S. Ct. 2174; *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980)).

Personal jurisdiction may be "specific" or "general". For specific personal jurisdiction, a plaintiff makes a *prima facie* showing of minimum contacts when his claim arises from the defendant's contact with the forum. *Companion*, 723 F.3d at 559 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984)). For general personal jurisdiction, a plaintiff makes the requisite showing when that defendant's contacts are "continuous and systematic," so that the exercise of jurisdiction is proper irrespective of the relationship between the claim and the defendant's contact with the forum. *Companion*, 723 F.3d at 559 (citing *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 72 S. Ct. 413, 96 L. Ed. 485 (1952)).

*Discussion and Analysis*

Although the Plaintiffs briefly argue that the Defendants entered into contracts to be performed in part in Mississippi, they focus the majority of their arguments on personal jurisdiction on the tort prong of the long arm statute. The Plaintiffs argue that the allegedly faulty repairs giving rise to their claims were outside the scope of the Parties' contracts. It is important to note that the Plaintiffs do not dispute the validity of the contracts, only the scope. Next, the Plaintiffs argue that the alleged torts (negligence, gross negligence, etc.) took place, at least in part, in Mississippi conferring personal jurisdiction over the Defendants under the tort prong of the long arm statute.

In response, the Defendants argue that there are valid contracts between the Parties, but that none of the services outlined in the contracts were to be performed in Mississippi, and thus these contracts are insufficient to establish personal jurisdiction over the Defendants under the

4

contract prong of the long arm statute. The Defendants also argue that the Court does not have personal jurisdiction over them under the tort prong of the long arm statute, and that exercising personal jurisdiction over them would not comport with the requirements of due process. In the alternative, the Defendants argue that if the Court does find that it has personal jurisdiction over them, the Court should compel the Parties to binding arbitration per the contracts.

The Court is confident that it has personal jurisdiction over both Defendants under the contract and tort prongs of the long arm statute. The Parties had indisputably valid contracts in place at the time of the incidents giving rise to the Plaintiffs' claims, and the contracts[1] are specifically for airplane maintenance, repair, and parts. At least part of the contracts were performed in Mississippi when the Defendants sent their repair team here to work on the Plaintiffs' plane.

The Court also has jurisdiction over the Defendants under the tort prong. Under Mississippi law, a tort is not complete until an injury is suffered. *Courson v. Cordis Corp.*, No. 3:17-CV-00186-MPM, 2018 WL 3058867, at *2 (N.D. Miss. June 20, 2018) (citing *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1168 (5th Cir. 1985) (quoting *Smith v. Temco, Inc.*, 252 So. 2d 212, 216 (Miss. 1971)). If the injury occurs in Mississippi, the tort is committed, at least in part, in the state, and the requirements of the long-arm statute are satisfied. *Id.* The tortfeasor's presence in Mississippi is not required; causing an injury that occurs in the state is sufficient. *Id.* (quoting *Brown v. Flowers Indus, Inc.*, 688 F.2d 328, 333 (5th Cir. 1982)). The Plaintiffs have alleged sufficient facts, that the alleged injuries (damage to the plane, grounding of the plane, etc.) occurred in Mississippi, to establish a *prima facie* case of personal jurisdiction under the tort prong.

---

[1] Although the Plaintiffs argue that a repair order executed during the initial repairs supersedes the primary contracts, this argument is not well-taken because the repair order explicitly incorporates the primary agreements.

As to the relevant due process considerations, the Court finds that the Plaintiffs have established a *prima facie* showing of minimum contacts because their claims arise from the Defendants' contacts, the service contracts and the alleged tort injuries, with the forum. *Companion*, 723 F.3d at 559 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984)). This is sufficient to establish specific personal jurisdiction. *Id*.

*Arbitration*

As noted above, the Defendants argue that if the Court finds that it does have personal jurisdiction over them, that the claims must be sent to arbitration.

Under the Federal Arbitration Act, courts conduct a two-prong arbitration inquiry, determining "first, whether the parties intended to arbitrate the dispute, and second, if they did intend to arbitrate, 'whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims.'" *Qualcomm Inc. v. Am. Wireless License Group*, 980 So. 2d 261, 268 (Miss. 2007) (quoting *East Ford, Inc. v. Taylor*, 826 So. 2d 709, 713 (Miss. 2002)). "The first prong is two-fold in that the court considers whether there is a valid arbitration agreement and then whether the parties' dispute is within the scope of the arbitration agreement." *Greater Canton Ford Mercury, Inc. v. Ables*, 948 So. 2d 417, 421 (Miss. 2007) (citing *East Ford*, 826 So. 2d at 713). Under the second prong, "[t]he FAA mandates that arbitration agreements shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Ables*, 948 So. 2d at 423 (quoting *Terminix Int'l, Inc. v. Rice*, 904 So. 2d 1051, 1055 (Miss. 2004)).

In determining whether a party's dispute is within the scope of an arbitration agreement, courts examine whether the arbitration language is broad or narrow. If arbitration language is

6

"broad," then arbitration is "not limited to claims that literally 'arise under the contract.'" *Pennzoil Exploration and Production Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1067 (5th Cir. 1998). In that case, an arbitration clause "embraces all disputes between the parties having a significant relationship to the contract regardless of the label attached to the dispute." *Ramco*, 139 F.3d at 1067; *Doe v. Hallmark Partners, LP*, 227 So. 3d 1052, 1056–57 (Miss. 2017), reh'g denied (Aug. 10, 2017).

On the other hand, narrow arbitration language requires arbitration of disputes that directly "arise out of" a contract. "If the clause is 'narrow,' arbitration should not be compelled unless the court determines that the dispute falls within the clause." *Sedco, Inc. v. Petroleos Mexicanos Mexican Nat'l Oil Co. (Pemex)*, 767 F.2d 1140, 1145 n. 10 (5th Cir. 1985) (quoting *Prudential Lines, Inc. v. Exxon Corp.*, 704 F.2d 59, 65 (2d Cir. 1983)).

The two arbitration clauses at issue in this case are different. The Williams' clause contains the language: "arising with respect to this agreement", and the Textron clause contains broader language: "arising from or related to this agreement".

Under the above precedents it is clear that the broader Textron clause clearly encompasses the Plaintiffs' claims. The damage to the Plaintiffs' airplane, allegedly caused by faulty repairs, has a significant relationship to the service contract. *See Begole v. N. Mississippi Med. Ctr., Inc.*, No. 1:17-CV-33-SA, 2018 WL 1463355, at *2 (N.D. Miss. Mar. 23, 2018) (citing *Ramco*, 139 F.3d at 1067; *Doe*, 227 So. 3d at 1056–57). As to the narrower language used in the Williams' clause the court must determine whether the dispute falls within the clause.

Paragraph 15.3 of the Williams' contract states as follows: "Williams Responsibility. Williams shall be responsible for damage to or loss of owner's engine while in the possession of Williams, unless such damage or loss is caused by the negligence of a third party or Owner or

Designee." The "Coverage" section of the Williams' contract, indicates that "Williams will provide . . . Unscheduled Maintenance and Repair" which is defined in the contract as "maintenance required at other major periodic inspection intervals due to a failure of an item." This appears to the Court to be precisely what the Plaintiffs' have alleged, specifically, that the Defendants negligently installed a seal backwards, which failed causing damage to the engine that eventually necessitated removing the engine from the plane and extensive repairs.[2]

Courts resolve "doubts concerning the scope of coverage of an arbitration clause in favor of arbitration." *PoolRe Ins. Corp. v. Organizational Strategies, Inc.*, 783 F.3d 256, 263 (5th Cir. 2015) (citing *Pennzoil Exploration & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1067 (5th Cir. 1998); *Neal v. Hardee's Food Sys., Inc.*, 918 F.2d 34, 37 (5th Cir. 1990)). Based on these relevant sections from the Contract, and despite the narrow language of the arbitration clause, the Parties' dispute clearly arises with respect to their agreement and falls within the arbitration clause.

As to the second prong of the arbitration inquiry "whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims", the Plaintiffs raise no argument against the Williams' contract but briefly argue that one section of the Textron arbitration clause is unconscionable. *Qualcomm*, 980 So. 2d at 268; *East Ford, Inc.*, 826 So. 2d at 713. Specifically, the Plaintiffs argue that the arbitration clause's exception for "third-party claims in litigation and Cessna-initiated collection agency actions or civil litigation for amounts owed by Customer . . ." is a one-sided agreement that allows Textron to go to court but prevents the Plaintiffs from doing

---

[2] The Court notes that the fact that the Plaintiffs' have expressed their claims as tort claims and not contract claims is not a meaningful distinction as far as arbitration is concerned. "When determining the scope of arbitration, we focus 'on factual allegations in the complaint rather than the legal causes of action asserted.'" *Briovarx, LLC v. Transcript Pharmacy, Inc.*, 163 So. 3d 311, 316 (Miss. Ct. App. 2015) (citing *Scruggs v. Wyatt*, 60 So. 3d 758, 766 (Miss. 2011); *Waste Mgmt., Inc. v. Residuos Industriales Multiquim, S.A.*, 372 F.3d 339, 344 (5th Cir. 2004)). "If the allegations underlying those claims 'touch matters' covered by the parties' agreements, then those claims must be arbitrated, whatever the legal labels attached to them." *Id*.

so. The Plaintiffs argue that this one-sided agreement is substantively unconscionable and that the arbitration clause is therefore avoidable.

It is undisputed that this exception is not applicable in this case. This case does not involve any third-party claims, collection, or civil litigation for amounts owed by the Customer. Even if this exception was found to be unconscionable, the contract contains a severability clause that would allow the Court to sever this exception. Doing so would not impact the remainder of the arbitration clause or the Court's analysis of the scope of the clause above.

Even so, unconscionability can be "proven by oppressive contract terms such that there is a one-sided agreement whereby one party is deprived of all the benefits of the agreement or left without a remedy for another party's nonperformance or breach." *Mooney v. Jimmy Gray Chevrolet, Inc.*, No. 3:16-CV-00010-DMB, 2017 WL 579560, at *8 (N.D. Miss. Feb. 13, 2017) (citing *Caplin Enters., Inc v. Arrington*, 145 So. 3d 608, 614 (Miss. 2014) (internal quotation marks omitted). However, "[i]t is not necessary that arbitration agreements contain mutual promises that give the parties identical rights and obligations, or that the parties must be bound in the exact same manner." *See id.* (internal quotation marks omitted). In order to determine if substantive unconscionability exists, a court must look to the four corners of the agreement. *Mooney*, 2017 WL 579560, at *8 (citing *Covenant Health & Rehab. of Picayune, LP v. Estate of Moulds ex rel. Braddock*, 14 So. 3d 695, 699 (Miss. 2009).

The Plaintiffs have not brought forth any argument or evidence demonstrating that they have been "deprived of all the benefits of the agreement". For these reasons, the Plaintiffs' unconscionability argument is not well-taken.

The Court finds that the Parties intended to arbitrate the dispute in questions, and that no legal constraints external to the Parties' agreements foreclose the arbitration of their claims. *See Qualcomm Inc.*, 980 So. 2d at 268; *East Ford, Inc.*, 826 So. 2d at 713.

*Conclusion*

For all of the reasons fully discussed above, the Court finds that it has personal jurisdiction over the Defendants in this case, and that the Parties intended, and contracted, to arbitrate their claims. The Defendants' Motions to Dismiss, or alternatively, to Compel Arbitration [6, 13] are DENIED in part, and GRANTED in part. The Defendants' request to dismiss the Plaintiffs' claims is DENIED. The Defendants' request to compel arbitration is GRANTED.

The Parties' shall arbitrate their claims pursuant to the terms of their respective contracts. This Case is STAYED and administratively closed pending the outcome of the arbitration. Within 30 days of the date of this order, the Parties shall provide notice to the Court on the docket that arbitration has been scheduled.

So ORDERED on this the 26th day of September, 2018.

                                             /s/ Sharion Aycock
                                             UNITED STATES DISTRICT COURT JUDGE